# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CASE NO. 22-11285-BB

CIERRA GETER,

*Plaintiff-Appellant,*

v.

SCHNEIDER NATIONAL CARRIERS, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
HONORABLE STEVE C. JONES
CASE NO. 1:20-cv-01148-SCJ

## APPELLANT CIERRA GETER'S REPLY BRIEF

**CHERYL B. LEGARE**
**Georgia Bar No. 038553**
**CAMILLE J. MASHMAN**
**Georgia Bar No. 612930**

**LEGARE, ATTWOOD & WOLFE, LLC**
**125 Clairemont Avenue, Suite 380**
**Decatur, Georgia 30030**
**(470) 823-4000 | cblegare@law-llc.com**

**Counsel for Appellant Cierra Geter**

**C-1**

<u>CERTIFICATE OF INTERESTED PERSONS</u>
<u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1, the undersigned counsel of record verifies that those persons or entities listed below have or may have an interest in the outcome of this case:

Allen, Meredith Laughlin – Counsel for Appellee

Anand, Hon. Justin S. – Magistrate Judge

Fitzgerald, Matthew A. – Counsel for Appellee

Geter, Cierra – Appellant/Plaintiff below

Jones, Hon. Steve C. – Judge, United States District Court

Legare, Cheryl B. – Counsel for Appellant

Legare, Attwood & Wolfe, LLC – Counsel for Appellant

Lehnen, Katherine E. – Counsel for Appellee

Mashman, Camille J. – Counsel for Appellant

McGuireWoods LLP – Counsel for Appellee

Milianti, Peter A. – Counsel for Appellee

Schneider National Carriers, Inc. – Appellee/Defendant below

Weiss, Melissa M. – Counsel for Appellee

## Table of Contents

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT……………………………………………...C-1

TABLE OF CONTENTS………………………………………………...…..i

TABLE OF CITATIONS……………..…………………….………...………....iii

ARGUMENT AND CITATIONS OF AUTHORITIES…………….…………1

I.    Geter was a Qualified Individual Under the ADA Because She Could Perform the Essential Functions of her APM Position…………………2

  A.    The legal standard…………………………………………………..3

  B.    Full-time work was not an essential function of the APM position.5

    1.    Schneider's business judgment…………………………...……….5

    2.    The work experiences of other Schneider employees………9

    3.    The consequences of permitting Ms. Geter temporary reduced hours…………………………………………………..11

  C.    In-person work was not an essential function of the APM position……………………………………………………...12

    1.    Schneider's business judgment…………………………..12

    2.    The work experience of others and consequences of remote work………………………………………………………13

    3.    The current experience of APMs…………………..….…17

II.    Geter's Requested Accommodations were Reasonable…………………18

  A.    Ms. Geter's request was reasonable…………………..…………..18

**B.    Any breakdown in the interactive process was caused by Schneider**…………………………………………………..…..**21**

**III.    Geter's Discrimination and Retaliation Claim Survives Summary Judgment for the Same Reason**……………………………….………**24**

**A.    Ms. Geter's ADA discrimination claim**……………………………**24**

**B.    Ms. Geter's retaliation claim**………………………………………**24**

**C.    Pretext**………………………………………………………………**24**

**CONCLUSION**…………………………………………………..………**25**

**CERTIFICATE OF COMPLIANCE**………………………...……………...**27**

**CERTIFICATE OF SERVICE**......…………………………………..……...**28**

# Table of Citations

**Cases**                                                                              **Page(s)**

*A.L. v. Walt Disney Parks & Resorts US, Inc.*,
　　900 F.3d 1270 (11th Cir. 2018)…………………….……………………….………1

*Abram v. Fulton Cty. Gov't*, 598 F. App'x 672 (11th Cir. 2015)………………....14

*Carlson v. Liberty Mut. Ins. Co.*, 237 F. App'x 446 (11th Cir. 2007)………..…....15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………10

*Church of Scientology v. City of Clearwater*, 2 F.3d 1514 (11th Cir. 1993)……...10

*D'Angelo v. ConAgra Foods*, 422 F.3d 1220 (11th Cir. 2005)………………...6, 11

*DeVito v. Chi. Park Dist.*, 270 F.3d 532 (7th Cir. 2001)…………………………...7

*Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000)……………………….....3

*EEOC v. Ford Motor Co.*, 782 F.3d 753 (6th Cir. 2015)…………….………...15

*Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273 (11th Cir. 2021)………………...1

*Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638 (1st Cir. 2000)……...…22

*Garrison v. City of Tallahassee*, 664 F. App'x 823 (11th Cir. 2016)………….…..7

*Garrison v. City of Tallahassee*, No. 4:15cv44-RH/CAS, 2015 U.S. Dist.
　　LEXIS186151 (N.D. Fla. Dec. 16, 2015)…………………………….…….7

*Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247 (11th Cir. 2007)…………..3, 6, 11

*Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128 (9th Cir. 2001)…………….…15

*Jackson v. Veterans Admin.*, 22 F.3d 277 (11th Cir. 1994)………………………...5

*Jernigan v. BellSouth Telecomms., LLC*, 17 F. Supp. 3d 1317 (N.D. Ga. 2014)…………………………………………………………………………4

*Jerome v. Barcelo Crestline, Inc.*, No. 1:07-cv-0447-WSD, 2009 WL 10657334 (N.D. Ga. June 17, 2009).……………...……………………….…….…...8

*Keith v. Cnty. of Oakland*, 703 F.3d 918 (6th Cir. 2013)………………………..4, 5

*Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989)…………………..22

*LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832 (11th Cir. 1998)………….17

*Lewis v. City of Union City*, 934 F.3d 1169 (11th Cir. 2019)…………………..3, 23

*Lucas v. Grainger*, 257 F.3d at 1249 (11th Cir. 2001)……………….…..…….3, 17

*Mason v. Avaya Communs., Inc.*, 357 F.3d 1114 (10th Cir. 2004)…………...14, 15

*Medearis v. CVS Pharm., Inc.*, 646 F. App'x 891 (11th Cir. 2016)……………...6

*Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996)………………..…5

*Nadler v. Harvey*, No. 06-12692, 2007 U.S. App. LEXIS 20272 (11th Cir. 2007)…………………………………………………………………….…17

*Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 685 (7th Cir. 1998)…………7

*Patterson v. Ga. Pac., LLC*, 38 F.4th 1336 (11th Cir. 2022)…......................…..23, 24

*Rabb v. Sch. Bd. of Orange Cty.*, 590 F. App'x 849 (11th Cir. 2014)…………7, 8

*Rorrer v. City of Stowe*, 743 F.3d 1025 (6th Cir. 2014)………………………...4, 5

*Samson v. Fed. Express Corp.*, 746 F.3d 1196 (11th Cir. 2014)………..4, 5, 11, 16,

*Solloway v. White*, No. 1:13-CV-03827-TWT-WEJ, 2017 U.S. Dist. LEXIS 44295 (N.D. Ga. Feb. 15, 2017)……………………………………....15

iv

*Terrell v. USAir*, 132 F.3d 621 (11th Cir. 1998)…………………………………..4, 8

*Webb v. Wynne*, No. 2:07-cv-471-ID, 2008 WL 4831740 (M.D. Ala. Nov. 3, 2008)…………………………………………………………………....12, 19

*Wright v. Southland*, 187 F.3d 1287 (11th Cir. 1999)……………………………10

**Statutes & Other Authorities**

42 U.S.C. § 12101………………………………………………………….2, 6

42 U.S.C. § 12111(8)…………………………………………………………3

42 U.S.C. § 12111(9)(b)……………………………………………...…..8

42 U.S.C. § 12112(b)(1)……………………………………………………..23

42 U.S.C. § 12112(b)(5)……………………………………………………..23

42 U.S.C. § 12112(b)(5)(A)……………………………………………...…4

29 C.F.R. § 1630.2(n)(3)(ii)-(vii)………………………………………….4

29 C.F.R. § 1630.2(o)………………………………………………………..22

29 C.F.R. § 1630.2(o)(1)(ii)……………………………………………....17

## ARGUMENT AND CITATION OF AUTHORITIES

Defendant Schneider urges this Court to affirm summary judgment and in doing so asks the Court to take disputed facts and make inferences in its favor even though it is the movant on its summary judgment motion. The Court should not abide this request because this Court reviews a summary judgment decision *de novo*, "viewing all facts and drawing all inferences in the light most favorable to" Ms. Geter, not Schneider. *Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1278 n.3 (11th Cir. 2021). As recently reiterated by this Court, "when determining whether there is a genuine issue of material fact that defeats summary judgment, we do not weigh conflicting evidence or make credibility determinations to resolve factual disputes. Instead, 'when conflicts arise between the facts evidenced by the parties, we must credit [the non-movant's] version.' And that is true even if, as is often the case, the plaintiff's evidence consists primarily or solely of her own self-serving sworn statements or testimony." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1350-51 (11th Cir. 2022) (citations omitted); *A.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018).

The District Court did not adhere to the summary judgment standard and Defendant Schneider National Carriers asks this Court to do the same: it improperly made credibility determinations, made inferences in Schneider's favor, and

discounted evidence in Ms. Geter's favor. Ms. Geter is entitled to proceed to trial because the evidence, when viewed in the light most favorable to her, the non-movant, shows Schneider subjected Ms. Geter to disability discrimination and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.*, when it terminated her employment rather than grant a two-month reasonable accommodation that would have permitted her to perform the essential functions of her job. Thus, this Court should reverse the District Court's dismissal of Ms. Geter's claims and remand for further proceedings.

## I.    Geter was a Qualified Individual Under the ADA Because She Could Perform the Essential Functions of her APM Position.

The reasonable accommodation at issue in this matter was a request by Ms. Geter that Schneider accommodate her **temporarily** – from March 30, 2019 to June 5, 2019 – by permitting her to work reduced hours and to work from home when she was scheduled alone. Ms. Geter never requested to permanently work reduced hours or permanently work from home. Rather, had Schneider granted the requested reasonable accommodation, Ms. Geter would have returned to work June 5, 2019 with no restrictions. Because full-time and in-facility work are not essential functions of the APM job as evidenced by Schneider's business judgment as reflected in the APM job description, the Flexible Work Arrangement ("FWA") and Remote Work policies, and its practice of permitting other employees to

2

occasionally work reduced hours and work from home ("everyone did it"), Ms. Geter's requests for accommodation were reasonable and would have permitted her to perform the essential functions of her job. Thus, Ms. Geter was a qualified individual with a disability under the ADA who Schneider failed to accommodate despite no undue hardship to Schneider.

### A.    The legal standard.

A qualified individual is someone with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Lewis v. City of Union City*, 934 F.3d 1169, 1182 (11th Cir. 2019) (citing 42 U.S.C. § 12111(8)). "An accommodation is 'reasonable' and necessary under the ADA . . . if it enables the employee to perform the essential functions of the job." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007) (citing *Lucas v. Grainger*, 257 F.3d at 1249, 1259-60 (11th Cir. 2001)). A "'reasonable accommodation' may include 'job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities,'" as Ms. Geter requested here. 42 U.S.C. § 12111(9)(b).

Essential functions of a job are "'the fundamental job duties of a position that an individual with a disability is actually required to perform.'" *Holly*, 492 F.3d at

1257 (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). Whether a job function is essential "is evaluated on a case-by-case basis by examining a number of factors" and "is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Samson v. Fed. Express Corp.*, 746 F.3d 1196, 1201 (11th Cir. 2014) (quoting *Keith v. Cnty. of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013)); *see also Jernigan v. BellSouth Telecomms., LLC*, 17 F. Supp. 3d 1317, 1322 (N.D. Ga. 2014). Among the factors a court must consider in determining if a job function is essential are the employer's judgment, "any written job description prepared . . . ; the amount of time spent on the job performing the function; the consequences of not requiring the employee to perform the function; . . . the work experience of past employees in the job; and the current work experience of employees in similar jobs." *Samson*, 746 F.3d at 1201; 29 C.F.R. § 1630.2(n)(3)(ii)-(vii).

Here, Ms. Geter requested to temporarily work a reduced hours schedule and to temporarily work remotely one day a week as reasonable accommodations for her disabilities, but Schneider insists that working full-time and working in the office were essential functions of Ms. Geter's job. Because the facts in this case do not support Schneider's contentions and instead support that working full-time and working in the office were not essential functions, Ms. Geter could have performed

the essential functions of the job with her requested temporary accommodations, and Schneider violated the ADA when it failed to accommodate her and terminated her employment on April 12, 2019. 42 U.S.C. § 12112(b)(5)(A); *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998); *Rorrer v. City of Stowe*, 743 F.3d 1025, 1038-39 (6th Cir. 2014) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)); *Keith*, 703 F.3d at 923. Thus, the District Court must be reversed.

## B.    Full-time work was not an essential function of the APM position.

Whether full-time work is an essential function of the job is a disputed issue of material fact in this case and is not "suitable for resolution on a motion for summary judgment." *Samson*, 746 F.3d at 1201. In certain situations, daily attendance may be an essential function of a position, however, it is not always an essential function. *See Jackson v. Veterans Admin.,* 22 F.3d 277, 279 (11th Cir. 1994). Viewed in its totality and in the light most favorable to Ms. Geter, the evidence of record establishes that full-time work was not an essential function of the APM position.

### 1.  Schneider's business judgment.

Schneider asks this Court to ignore the undisputed evidence that in its business judgment full-time and in-facility work are not essential functions of the APM position as clearly reflected by the APM job description and the Flexible Work

Arrangement ("FWA") and Remote Work ("RW") policies Schneider drafted and implemented. Because the job description and policies are strong evidence of Schneider's business judgment that full-time work and in-facility work **are not essential functions of the APM position**, Schneider is wrong.

"'[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . , this description shall be considered evidence of the essential functions of the job'" that the Court "must" give "substantial weight." *Holly*, 492 F.3d at 1257 (quoting 42 U.S.C. § 12111(8); *D'Angelo v. ConAgra Foods*, 422 F.3d 1220, 1230 (11th Cir. 2005)); *Medearis v. CVS Pharm., Inc.*, 646 Fed. Appx. 891, 896 (11th Cir. 2016) (citations omitted). The APM job description written by Schneider does not identify full-time work or in-facility work as essential functions of the APM position, and these omissions are strong evidence of Schneider's business judgment that full-time work and in-facility work are not essential functions of the APM job. (Doc. 46-4, pp. 73-74.)

To find further evidence of Schneider's business judgment that full-time and in-facility work are not essential functions of the APM position, the Court need look no further that Schneider's FWA and RW policies, under which employees are permitted to work reduced hours and remotely. (Doc. 47-3, 17:17-18:7; Doc. 47-6,

33:1-34:7; Doc. 50-6.) Under the policies, flexible work arrangements available to employees include: a "compressed work week, flexible start/end times, job share, part-time, and telecommuting [either temporarily or as a 'primary work schedule']." (Doc. 50-6.) In Schneider's business judgment, reduced hours and remote work are both permissible and possible. *(Id.)* Schneider attempts to minimize the importance of these policies by stressing that the policies are discretionary and company-wide. But contrary to Schneider's contention, these facts cut in favor of Ms. Geter, not Schneider, because they show that Schneider had the discretion to accommodate Ms. Geter as required by the ADA.

Nor do any of the cases cited by Schneider compel a different result. For example, in *DeVito v. Chi. Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001), the park laborer plaintiff was accommodated in light duty work for four years before being terminated for faking his injuries. In fact, the plaintiff had not worked full time for 13 years. *Id.* And, as noted in *DeVito*, a "gradual return to full-time work," exactly as Ms. Geter requested here, "would have been a reasonable accommodation," supporting that Ms. Geter's accommodation should have been granted. *Id.* (citing *Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 685, 697 (7th Cir. 1998)). Also, in *Garrison v. City of Tallahassee*, 664 F. App'x 823, 825-26 (11th Cir. 2016) and *Garrison v. City of Tallahassee*, No. 4:15cv44-RH/CAS, 2015 U.S. Dist. LEXIS

186151, at *3-5 (N.D. Fla. Dec. 16, 2015), the plaintiff, unlike Ms. Geter, requested a **permanent, *not temporary*,** accommodation to telecommute on an unscheduled basis where the company, unlike Schneider, had no such policy and, unlike Schneider, did not allow employees in her position to do so. Nor was Ms. Geter seeking to have Schneider create a permanent part-time position for her as did the plaintiff (a teacher who could no longer work full-time after 3 strokes and had been accommodated with a part-time position for two years before she was fired) in *Rabb v. Sch. Bd. of Orange Cty.*, 590 F. App'x 849, 851-53 (11th Cir. 2014). And Ms. Geter did not request that Schneider grant her an 18-month leave of absence as did the pro se plaintiff in *Jerome v. Barcelo Crestline, Inc.*, No. 1:07-cv-0447-WSD, 2009 WL 10657334, at *4 (N.D. Ga. June 17, 2009), who, unlike here, was a department head. Finally, in *Terrell v. USAir*, 132 F.3d 621, 626-27 (11th Cir. 1998), a part-time accommodation was found unreasonable because, again unlike Schneider, USAir had no policy permitting part-time employment.

There is no reason to believe APMs would be exempt from the clear policies implemented by Schneider permitting flexible work arrangements for reduced hours and remote work. Thus, a jury could, and likely would, conclude that Ms. Geter is a qualified individual under these Schneider-drafted policies and that Schneider could – and should – have granted Ms. Geter's requested accommodations. Reading a full-

time work requirement into the APM role when it is specifically absent from the job description and inconsistent with and directly contradicted by Schneider's FWA and RW policies would violate the provision of the ADA describing "reasonable accommodation[s]" as including "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." 42 U.S.C. § 12111(9)(b).

### 2.    The work experiences of other Schneider employees.

The work experiences of other employees working at Schneider with Ms. Geter also establish that full-time work was not an essential function of the position. Schneider repeatedly attempts to distinguish Ms. Geter because she was assigned to third shift, but this distinction is irrelevant because the Court only analyzes whether Ms. Geter could perform the APM position, not whether she is assigned to third shift. Ms. Geter was an APM, regardless of what shift she was assigned to. And as APM Kopf testified, based on her personal knowledge, Schneider employees were permitted to work part-time and remotely. (Doc. 47-4, 13:1-20, 14:5-21, 26:24-28:2.)

Moreover, the disputed fact that Ms. Geter's supervisor, Mr. Torrence, took off between 80 and 82 days in 2018 must be presumed true for purposes of summary judgment. (Doc. 47-1, 216:17-217:4; Doc. 47-2, 59:22-60:12; Doc. 50-3, ¶ 10; Doc. 50-4, ¶ 6.) That Torrence was permitted to miss at least 80 days of work shows that,

9

in the light most favorable to Ms. Geter, Schneider permits employees, regardless of position, to work reduced hours. Ms. Geter and APM Williams have personal knowledge of Mr. Torrence's schedule because they viewed the Fairburn office calendar, which is created by Schneider and to which all employees had viewing access, and the calendar noted all employees' days off. (Doc. 50-3, ¶ 10; Doc. 50-4, ¶ 6.) Schneider does not even allege that the calendar does not exist, it simply contends that it failed to produce it in discovery and now tries to impermissibly use its failure against Ms. Geter. Ms. Geter's and Ms. Williams' personal knowledge about the calendar Schneider itself created and made available to everyone in the office is admissible in analyzing summary judgment because it can be reduced to admissible evidence at trial both through the testimony of Mr. Torrence and by subpoenaing Schneider's business records for trial, as permitted by the Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Church of Scientology v. City of Clearwater*, 2 F.3d 1514 (11th Cir. 1993); *Wright v. Southland*, 187 F.3d 1287, 1304 n.21 (11th Cir. 1999). This evidence shows that Schneider's contention that it did not permit employees in the Fairburn hub to work part-time is flatly false.

### 3.    The consequences of permitting Ms. Geter temporary reduced hours.

Ms. Geter worked reduced hours from January 2, 2019 through her termination in April 2019 with no issues, little to no impact on the business, and no uncovered shifts as Schneider seems to imply in its brief. Although Mr. Torrence may have covered for Ms. Geter sporadically, he certainly did not do so on a weekly basis, and his assertion to the contrary is false. (Doc. 50-4, ¶ 9.) Rather, Mr. Seymour and Ms. Williams primarily covered for Ms. Geter, but there is absolutely no evidence that they worked more than full-time to do so or that there was any financial impact to Schneider at all. (Doc. 47-1, 137:10-140:4, 182:23-184:17; Doc. 50-4, ¶ 8.) And Schneider routinely transferred or temporarily assigned employees between shifts to cover for each other; it was not out of the ordinary and was not unusual or burdensome for them to do so here. (Doc. 47-2, 16:1-24; Doc. 47-4, 9:12-18.)

Thus, based on all the record evidence, the District Court's conclusion that this factor weighs in Schneider's favor and conclusion that full-time work was an essential function of the APM position must be reversed. *See Samson*, 746 F.3d at 1202-03 (reasonable jurors could differ as to whether test driving trucks is an essential function even where duty might have to be distributed to other employees); *D'Angelo*, 422 F.3d at 1233-34 (summary judgment reversed on qualification issue where conveyor belt work could be distributed to other employees); *Holly, L.L.C.*,

492 F.3d at 1257-58 ("although 'the employer's view is entitled to substantial weight in the calculus,' this factor alone may not be 'conclusive[].' Indeed, if it were considered to be conclusive, then an employer that did not wish to be *inconvenienced* by making a reasonable accommodation could, simply by asserting that the function is 'essential,' avoid the clear congressional mandate that employers 'mak[e] reasonable accommodations . . . , unless such covered entity can demonstrate that the accommodation would impose an *undue hardship* on the operation of the business of such covered entity.'" (citations omitted)).

### C.    In-person work was not an essential function of the APM position.

#### 1.    Schneider's business judgment.

For the same reasons addressed in Section I above, Schneider's business judgment is that in-facility work is not an essential function of the APM position, as established by the Schneider-written APM position description and the Schneider-written FWA and RW policies. (Doc. 47-3, 17:17-18:7; Doc. 47-6, 33:1-34:7; Doc. 50-6; Doc. 61, p. 7.) Further evidence that in Schneider's business judgment in-facility work is not an essential function of the job is the direct and uncontradicted statement by Travis Torrence when he told Ms. Geter that it was fine for her to work from home any time she was scheduled to work alone because **<u>"everyone did it."</u>** (Doc. 47-1, 147:1-151:12, 209:18-210:7, 210:19-211:14; Doc. 47-2, 57:11-21; Doc.

47-4, 14:5-21; Doc. 47-5,19:1-11; Doc. 50-4, ¶ 14.) Schneider attempts to dilute this statement with a "clarification" that Torrence was allegedly referring to short-term requests, which, for the record, Ms. Geter's was. But Torrence did not tell her that. He told her she could work from home whenever she was scheduled alone. Taken in the light most favorable to Ms. Geter, because "[w]hen considering the employer's judgment, courts will look to . . . testimony from the plaintiff's supervisor," this evidence supports no other conclusion than that in Schneider's judgment in-person work is not an essential function of the job. *Webb v. Wynne*, No. 2:07-cv-471-ID, 2008 WL 4831740, at *6 (M.D. Ala. Nov. 3, 2008).

### 2.    The work experience of others and consequences of remote work.

The evidence taken in Ms. Geter's favor shows that APM Kitchens was permitted to continuously work remotely for at least four months while her mother was ill and is still employed by Schneider, even though Ms. Biskey-Rose does not recall it this way. (Doc. 47-1, 198:6-199:1, 199:9-203:21, 204:12-205:10, 217:17-218:18, Doc. 47-5, 8:1-24, 15:15-18:15; Doc. 47-2, 17:18-21; Doc. 47-6, 34:21-36:5.) Further, the entire time Ms. Geter worked for Schneider, everyone was permitted to work from home as needed, and it was common for APMs to work from home. (Doc. 47-1, 209:18-210:7, 210:19-211:14; Doc. 47-4, 14:5-21; Doc, 47-5, 19:1-11; Doc. 50-4, ¶ 14.)

13

Additional evidence taken in the light most favorable to Ms. Geter that working from the facility was not an essential function of the APM position also includes that: (1) APMs, including Ms. Geter, supported drivers remotely initially as far away as Canada and, after 2016, throughout the southeast (compare Doc. 47-1, 59:2-60:12; Doc. 50-4, ¶ 11 to Doc. 53, p. 46); (2) Ms. Geter supported drivers in Atlanta, Charlotte, Miami, Orlando, Jacksonville, and Savannah remotely by taking calls and messages from drivers (Doc. 47-1, 55:3-12.); (3) the only drivers Ms. Geter ever saw face-to-face, and only sporadically at that, were the 0.05 percent of drivers based in Atlanta – from 100 to 110 of the 2,250 drivers she assisted (compare Doc. 47-1, 55:13-56:7; Doc. 50-4, ¶ 11 to Doc. 53, pp. 46-47); (4) APMs located trailers throughout the southeast for drivers remotely using GPS software maintained by Schneider that APMs could access remotely (compare Doc. 50-3, ¶ 14; Doc. 50-4, ¶ 12 to Doc. 53, p. 47); (5) for all hubs outside Atlanta, and as could have been done in Atlanta, keys to the trucks were kept in combination boxes to which the drivers had access (compare Doc. 50-3, ¶ 14; Doc. 50-4, ¶ 12 to Doc. 53, pp. 47-48); and (6) for drivers outside Atlanta, as could be done for drivers in Atlanta, Ms. Geter printed paperwork remotely to printers in the hubs or to printers in truck stops to which the drivers had access (compare Doc. 50-3, ¶ 15; Doc. 50-4, ¶ 13 to Doc. 53, pp. 47-48). Even before Schneider moved all APMs to Green Bay to perform APM

14

duties for the southeast remotely, APMs could locate trucks remotely from home by GPS and print driver paperwork remotely, and drivers had direct access to keys at all the hubs except Fairburn. (Doc. 50-3, ¶¶ 14, 15; Doc. 50-4, ¶¶ 12, 13.) There is no evidence in the record that it would not have been simple all along to move the printer, so drivers had access to it, and place a lockbox with keys within driver access just as was done at all other hubs.

Contrary to Schneider's contention at p. 43 of its brief, customer service skills, interpersonal skills, working effectively in a team environment, collaborating, and coaching are not listed as essential functions of the APM position. (Doc. 46-4, pp. 73-74.) Nor are these aspirations consistent with Schneider's earlier contentions that third shift APMs work alone or that third shift is staffed leanly. And, again, the cases cited by Schneider are inapposite here. For example, the plaintiff in *Abram v. Fulton Cty. Gov't*, 598 F. App'x 672, 677-78 (11th Cir. 2015), who requested a permanent accommodation to work remotely where, unlike here, the county had no such policy, was found not qualified because the record evidence showed she worked the front desk two hours a day most days. And although the court in *Mason v. Avaya Communs., Inc.*, 357 F.3d 1114, 1123-24 (10th Cir. 2004) concluded that the plaintiff was not qualified because of a *permanent* request to work from home, it also noted that where, like here, "the essential functions of the position can be

performed at home and a work-at-home arrangement would not cause undue hardship for the employer," "working at home is a reasonable accommodation." *Id.* (citing *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001)). If anything, *Mason* supports Ms. Geter's position that in-facility work is not an essential function of the APM job, as do other cases cited by Schneider. *See EEOC v. Ford Motor Co.*, 782 F.3d 753, 761-64 (6th Cir. 2015) (plaintiff not qualified where, unlike here, employer's words, policies, and practices supported in-person work and, unlike here, the employee was excessively absent even after employer attempted to accommodate her remote work request); *Carlson v. Liberty Mut. Ins. Co.*, 237 F. App'x 446, 449-50 (11th Cir. 2007) (genuine issue of fact regarding whether full-time presence was essential for a leader but no issue of fact that some presence, like Ms. Geter's request here, was required); *Solloway v. White*, No. 1:13-CV-03827-TWT-WEJ, 2017 U.S. Dist. LEXIS 44295, at *53-59 (N.D. Ga. Feb. 15, 2017) (plaintiff accommodated with part-time remote work, placed on paid leave when policy changed, then returned to work remotely when policy allowing for remote work was established – like here). Where, as established here, Ms. Geter and all other APMs could fulfill their responsibilities from home and Schneider has policies permitting remote work, in-facility work is not an essential function of the job.

### 3.    The current experience of APMs.

The ADA requires that the current experience of employees be considered in determining the essential functions of a position. *Samson*, 746 F.3d at 1201; 29 C.F.R. § 1630.2(n)(3)(ii)-(vii)). Since Ms. Geter's termination, Schneider relocated all APMs to Green Bay to dispatch drivers remotely throughout the country and APMs worked remotely throughout the pandemic, both showing that it is possible for APMs to perform their jobs, including all essential functions, remotely. (Doc. 47-2, 15:10-12, 18:22-19:11, 25:15-30:25; Doc. 47-3, 20:10-21:25, 25:10-16, 46:6-47:9; Doc. 47-4, 11:10-14, 17:2-18:2; Doc. 47-5, 12:11-23, 14:23-15:14; Doc. 47-6, 20:3-25:5, 29:9-15.) In fact, there is no evidence in the record that Schneider eliminated any functions – essential or otherwise – of the APM job when it moved the APMs to Green Bay, or that any functions of any Schneider jobs were eliminated when the employees dispatched drivers from home throughout the pandemic. It is true that EEOC guidance shows that an employer does not need to continue to eliminate essential functions when it returns its employees to the office but, since no essential functions of the APM job were eliminated to begin with during the pandemic, this guidance is not relevant to the issues in this case. The ADA requires that the current experience of employees be considered, and though the R&R dismisses them, these facts are relevant in determining that summary judgment

should have been denied.

## II.     Geter's Requested Accommodations were Reasonable.

### A.     Ms. Geter's request was reasonable.

Whether an employee is "qualified" depends on available reasonable accommodations. An accommodation is "reasonable" under the ADA if it enables the employee to perform the essential functions of the job. *Lucas*, 257 F.3d at 1259-60; *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998); *see also* 29 C.F.R. § 1630.2(o)(1)(ii). What constitutes a reasonable accommodation depends on the circumstances but may include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). A failure to accommodate claim "requires no animus" or "discriminatory motivation" and may "result in different treatment for a disabled person than a nondisabled person." *Nadler v. Harvey*, No. 06-12692, 2007 U.S. App. LEXIS 20272, at *4, 8 (11th Cir. 2007). Here, Ms. Geter requested that she temporarily be permitted to work 75% time and to work remotely when she was scheduled alone. Had she been accommodated, Ms. Geter would have been able to resume all her duties in the facility following June 5, 2019. A reasonable jury could conclude that Ms. Geter's requested accommodations were reasonable as shown thoroughly in Section I, above.

In concluding that Ms. Geter's request was unreasonable, both the R&R and Schneider ignored that: (1) working full-time was not an essential function of the APM position and, in fact, Schneider has a policy under which its employees may seek permission to work flexible or reduced hours (Doc. 50-6.); (2) Ms. Geter worked reduced hours from January 2, 2019 through her termination in April 2019 with no issues; and (3) there is absolutely no evidence that Ms. Geter working less than full-time caused her coworkers to work more than their scheduled 40 hours per week to cover her, so it could not have been a burden to them.[1] (Doc. 53, pp. 58-59.)

As working full-time was not an essential function of the APM job, when Ms. Geter temporarily worked reduced hours, she was still performing all the essential functions of her job – contrary to the R&R's conclusions otherwise. Ms. Geter did not seek to have a duty removed. Instead, Ms. Geter needed to work reduced hours temporarily until her planned return to full-time work on June 5, 2019.[2] (Doc. 46-4, pp. 94-95, 96-98; Doc. 47-1, 160:10-162:13; Doc. 47-2, 52:6-9; Doc. 47-3, 42:12-

[1] These arguments are inappropriate in a reasonable accommodation analysis; they would be more appropriate in an undue burden analysis. However, it is undisputed that Schneider never performed an undue burden analysis. Therefore, Schneider does not get the benefit of that affirmative defense at summary judgment.

[2] On March 30, 2019. Dr. Wanzo requested to extend Ms. Geter's request for reasonable accommodation to June 5, 2019 and believed that there was a ninety-five percent chance that Ms. Geter would then be able to return to full duty. (Doc. 47-2, 52:6-9; Doc. 47-1, 160:10-162:13; Doc. 46-4, pp. 96-98; Doc. 47-3, 42:12-25.)

25; Doc. 46-4, pp. 96-98.) Thus, Ms. Geter's requested accommodation to continue to work her reduced hours schedule through June 5, 2019 was reasonable.

In February 2019, Mr. Torrence told Ms. Geter that if she was scheduled to work alone, it was fine for her to work from home because "everyone did it." (Doc. 47-1, 147:1-151:12, 209:18-210:7, 210:19-211:14; Doc. 47-2, 57:11-21; Doc. 47-4, 14:5-21; Doc. 47-5, 19:1-11; Doc. 50-4, ¶ 14.) Nowhere in the R&R or the District Court opinion is this statement addressed or even mentioned, even though "[w]hen considering the employer's judgment, courts will look to . . . testimony from the plaintiff's supervisor." *Webb v. Wynne*, No. 2:07-cv-471-ID, 2008 WL 4831740, at *6 (M.D. Ala. Nov. 3, 2008). That Mr. Torrence made this statement is undisputed. It is also undisputed that Ms. Geter worked from home when she was scheduled to work alone from February to April, without issues. (Doc. 47-1, 147:1-151:12; Doc. 47-2, 57:11-21.) The entire time Ms. Geter worked for Schneider, the entire staff was permitted to work from home as needed, and it was common for APMs to do so. Ms. Kitchens worked full-time remotely for at least four months, APM Williams worked from home regularly throughout the later part of her pregnancy, the APMs all perform their jobs remotely now, and everyone except the drivers worked remotely during the pandemic. (Doc. 47-1, 198:6-199:1, 199:9-203:21, 204:12-205:10, 217:17-218:18, Doc. 47-5, 8:1-24, 12:11-23, 14:23-18:15; Doc. 47-2, 15:10-

12, 16:18-21, 18:22-19:15, 25:15-29:25, 30:14-25, 31:8-32:3; Doc. 47-3, 20:10-21:25, 25:10-16, 46:6-47:9; Doc. 47-4, 11:10-14, 16:17-18:2, 28:11-14; Doc. 47-6, 20:3-23:5, 29:9-15, 34:21-36:5; Doc. 50-4, ¶ 10.) To accommodate the change in the staff working remotely, Schneider gave the 100 Atlanta drivers direct access to the printer and truck keys, which the 2,150 other southeastern drivers always had at the other southeastern hubs. (Doc. 47-5, 22:2-23:8; Doc. 47-6, 28:19-29:8, 29:16-31:1; Doc. 50-3, ¶¶ 14, 15; Doc. 50-4, ¶¶ 12, 13.) The substantial evidence that working remotely is a routine practice for APMs and other Schneider employees establishes that a jury could easily conclude that Ms. Geter's request to work from home when she was scheduled to work alone was reasonable, the District Court should have rejected the R&R on this issue, and summary judgment should have been denied.

**B.    Any breakdown in the interactive process was caused by Schneider.**

On April 2, 2019, Schneider sent Ms. Geter and Dr. Wanzo reasonable accommodation paperwork for more information about her accommodation requests, Ms. Geter provided the paperwork to her doctor, Ms. Geter communicated back and forth with leave management about the status of the requested additional paperwork through her termination on April 12, 2019, and Schneider failed to make Ms. Geter aware that it thought she was taking too long to get her paperwork returned. (Doc. 46-4, pp. 99, 101-103; Doc. 47-1, 159:9-160:2, 171:11-173:22,

186:17-187:9; Doc. 50-3, ¶ 18.) Ms. Geter would have followed up with Dr. Wanzo regarding the missing paperwork if Schneider had asked her to do so. (Doc. 50-3, ¶ 18.)

Other accommodations were possible and would have been reasonable if Schneider had bothered to consider them. Other that one conversation with Ms. Biskey-Rose in which she asked if Ms. Geter could switch her Monday group therapy session and Ms. Geter told her it was not possible, nobody from Schneider discussed any other possible accommodations with Ms. Geter before deciding to no longer accommodate her. (Doc. 50-3, ¶ 19; Doc. 47-2, 55:12-16, 56:9-57:10, 61:23-62:2; Doc 47-3, 27:12-16.) If Schneider had offered Ms. Geter a transfer to second shift, she would have accepted it. (Doc. 50-3, ¶ 20.) Moreover, during Ms. Geter's employment, Schneider used temporary employees to fill in as APMs; Ms. Geter often trained those employees. (Doc 47-1, 78:16-25, 79:8-19, 132:5-24, 133:6-15, 139:22-25; Doc. 47-2, 70:2-71:19; Doc 47-3, 9:18-10:1, 44:21-25; Doc. 47-5, 19:12-20:12; Doc. 47-6, 31:15-33:1; Doc. 50-3, ¶ 11.) Yet, Schneider did not even consider bringing a temporary employee in to cover for Ms. Geter temporarily. (Doc 47-3, 45:1-14; Doc. 47-6, 38:6-43:20.)

Nor did Schneider consider placing Ms. Geter on leave through June 5, 2019, as an alternative accommodation, and had it offered that alternative to Ms. Geter she

would have accepted. (Doc. 47-6, 38:6-43:20; Doc. 50-3, ¶¶ 19, 21.) Leave of a definite duration is an accommodation that would have allowed Ms. Geter to return to full duty on June 5, 2019, so even if Ms. Geter was not qualified because of her temporary need to work thirty hours and to temporarily work from home when she was scheduled to work alone, she was still qualified for her position under the ADA because she could have performed the essential functions of her job with a temporary reasonable accommodation, and summary judgment should have been denied. *See* 29 C.F.R. Part 1630, App. (discussing § 1630.2(o)); *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638 (1st Cir. 2000); *see also Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 878 (9th Cir. 1989) (leave of absence reasonable where no evidence showed undue hardship on the employer).

Finally, Schneider produced no evidence that it performed an undue hardship analysis in determining whether to accommodate Ms. Geter. (Doc. 47-2, 68:2-71:19; Doc 47-3, 16:6-17:4; Doc. 47-6, 38:6-43:20.) Instead, on April 12, 2019, Schneider terminated Ms. Geter. (Doc. 46-4, p. 100; Doc 47-1, 177:10-181:4, 182:13-19; Doc. 47-2, 52:10-13, 56:3-8; Doc 47-3, 29:8-15, 42:12- 44:20; Doc. 47-6, 38:6-22.) Although there was a clear end date – June 5, 2019 – for Ms. Geter's accommodation request, Mr. Torrence believed it was too "taxing" to continue to accommodate Ms. Geter. (Doc. 47-2, 52:15-53:16.) Almost immediately after Schneider terminated

23

Ms. Geter, Schneider moved someone from first shift to third shift and hired two new people to work third shift, something it could have done sooner. (Doc 47-1, 181:17-182:4; 211:15-20.)

### III. Geter's Discrimination and Retaliation Claim Survives Summary Judgment for the Same Reason.

#### A. Ms. Geter's ADA discrimination claim

Ms. Geter establishes a prima facie case of disability discrimination because: (1) it is undisputed that she is disabled; (2) record evidence establishes that she was a "qualified individual" at the relevant time; and (3) it is undisputed that Ms. Geter was terminated because she needed an accommodation for her disability. *Id.* at 1256; *Lewis*, 934 F.3d 1184; 42 U.S.C. § 12112(b)(1) & (5).

#### B. Ms. Geter's retaliation claim

As the District Court concluded, Ms. Geter established a prima facie case of retaliation under the ADA because she established that: (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. (Doc. 61, p. 19 adopting Doc. 53, pp. 82-87.)

#### C. Pretext

As its excuse for terminating Ms. Geter, Schneider again alleged that Ms. Geter was unable to perform the essential functions of her job because she needed

24

the temporary, short-term accommodations to work reduced hours and to occasionally work remotely. Because, as shown above, Ms. Geter was, in fact, capable of performing the essential functions of her job with her requested reasonable accommodations, Ms. Geter has shown that any reason for terminating her employment rather than allowing her the benefit of reasonable accommodations is pretext for discrimination and retaliation. Thus, summary judgment should have been denied as to her claims, and the District Court must be reversed. *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1353-54 (11th Cir. 2022) (summary judgment reversed where employee met head on employer's excuses for her termination).

## **CONCLUSION**

As shown above, Ms. Geter presents substantial evidence when taken in the light most favorable to her that shows that summary judgment should have been denied on her ADA claims. Accordingly, because the lower court failed to adhere to summary judgment standards and precedent, the court should be reversed, and Ms. Geter's claims should be reinstated for jury trial.

Respectfully submitted this 24th day of October 2022.

LEGARE, ATTWOOD & WOLFE, LLC

*s/ Cheryl B. Legare*
Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com

25

Camille J. Mashman
Georgia Bar No. 612930
cjmashman@law-llc.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Appellant hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 5,887 words.

LEGARE, ATTWOOD & WOLFE, LLC

*s/ Cheryl B. Legare*
Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com
Camille J. Mashman
Georgia Bar No. 612930
cjmashman@law-llc.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this 24th day of October 2022 served copies of

**Appellant Cierra Geter's Reply Brief** upon the parties listed below by electronic

mail and by depositing copies of the same in the United States mail, with sufficient

postage thereon, addressed to:

M. Laughlin Allen
McGuireWoods LLP
1230 Peachtree Street, N.E
Suite 2100, Promenade
Atlanta, GA 30309-3534

Peter A. Milianti
Melissa M. Weiss
McGuireWoods LLP
77 West Wacker Drive, 41st Floor
Chicago, IL 60601

Matthew A. Fitzgerald
McGuireWoods LLP
Gateway Plaza, 800 East Canal Street
Richmond, VA 23219-3916

LEGARE, ATTWOOD & WOLFE, LLC

*s/ Cheryl B. Legare*
Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com
Camille J. Mashman
Georgia Bar No. 612930
cjmashman@law-llc.com

125 Clairemont Avenue, Suite 380

28

Decatur, Georgia 30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212